EDWARD B. BLAISDELL et al., appellants,

*v.*

GRANTINA B. DEREES et al., respondents.

[Decided October 17th, 1927.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"An appeal having been taken from the final decree entered in this cause, I am requested by the appellant to state and file my reasons for advising said decree.

"By deed dated November 11th, 1892, the complainant Edward B. Blaisdell became the owner of two lots at Wannamassa, in Monmouth county. By bargain and sale deed dated April 13th, 1926, he and his wife (the other complainant) conveyed the lots to the defendant Grantina B. Derees, who by deed dated June 18th, 1926, in which her husband, the

defendant Henry S. Derees, joined, conveyed the lots to the defendant Frederick J. Howlett. The complainants sought to set aside the conveyance by which title became vested in Howlett on the ground that the deed from them to Mrs. Derees was obtained by fraud practiced by Mr. Derees, acting as agent for his wife, of which fraud Howlett had notice.

"Blaisdell and Derees were strangers. On April 13th, 1926, Derees called on Blaisdell and induced the latter to execute the bargain and sale deed to Mrs. Derees for the consideration of $200. The fraud of which the complainants complain is that in the negotiations that day, Derees told them that he was employed by a corporation in clearing up tax titles and received $10 for each deed obtained as compensation for his services; that he had no personal interest in the transaction and had come to offer the complainants $200 for their interest in the property in question; that when complainants hesitated over accepting his offer, he told them the property had been twice sold for unpaid taxes and that complainants no longer owned it or had any interest in it; that if complainants did not accept his offer at once, he would not return to them but would go to the 'sheriff' at Freehold and obtain a deed from him; that believing what Derees said, they executed the deed and thereafter learned that they had conveyed to Derees' wife, and that the property was worth considerably more than the amount of the tax lien thereon. Derees denied these statements. He testified that his business for about two years had been the purchase and sale of tax liens; that he had ascertained the amount required to redeem the lots from the tax sales thereon and then called upon the complainant with a deed of bargain and sale, in which his wife was named as grantee, and offered to pay $200 if they would execute the deed; that he asked why they had not paid the taxes and told them the property had been sold at least twenty times for tax arrears and asked why they had not redeemed; that Mrs. Blaisdell said she did not know whether or not it was right for her to sign, whereupon her husband said he would give her the consideration money if she would; that after Mr. Blaisdell had read the deed,

he and his wife executed it, Derees taking their acknowledgment as notary and he paid them $200 by check signed by Grantina B. Derees, and that he made none of the statements attributed to him by the complainants.

"Mr. Blaisdell was seventy-seven years old at the time of the hearing of this cause and his wife was seventy-five. Both were apparently in good health and of average intelligence. He is a retired business man who has had four or five experiences in the purchase and sale of real estate and he owns his own home. He impressed me as a man well informed in ordinary business affairs and as possessing the average man's ability to take care of himself in a simple real estate transaction. From the time he purchased the lots in 1892 he had paid no taxes on them, in the first years because the tax collector had sent him no tax bill and latterly because he did not consider the property worth the tax arrears which he believed had accumulated thereon. He admitted he knew or believed, as of course he must have known, that because of his failure to pay taxes his lots had been sold by the township. Both complainants insist that Derees informed them that there had been two tax sales, while Derees insists he told them there had been twenty. In fact, the property had been sold to the township at least twenty times for unpaid taxes. Mr. Blaisdell must be charged with the knowledge which every property owner has, that during the thirty-four years wherein he had failed to pay taxes, there must have been many more than two tax sales. Derees knew that the lots could be redeemed from the township; he had taken the precaution to ascertain what sum would be required for that purpose and he had an opinion as to the value of the lots. Blaisdell also had some idea as to what the lots were worth and he assumed, without knowing the amount of tax arrears, that they were not worth the liens thereon. Whether or not he knew he could redeem does not appear by direct testimony. Derees was there to buy the lots as cheap as possible. He was not bound to impart to Blaisdell all the information he had gathered. All that was required of him was that he should make no false statements or representations to Blais-

dell of a material fact and that he should conceal no fact that it was his duty to disclose. In a real estate deal, where no relation of trust or confidence exists between vendor, a purchaser, the parties deal with each other at arm's length and each has the legal right to obtain such advantage over the other, with regard to the price, as is possible, for gain or profit is the object of such transactions. The fact that a seller parts with his property at a price below its market value is not, standing alone, evidence that he has been defrauded.

"The first fraudulent statement attributed to Derees is that he represented to the complainants that he was purchasing for a corporation and not for himself. It would seem that Derees could not have made this statement, because the deed exhibited to the complainants named Mrs. Derees as the grantee and her name was endorsed on its back. It was handed to Mr. Blaisdell to read and he says he examined it, especially the description—there was no attempt to prevent him from reading it from beginning to end—and the consideration was paid by Mrs. Derees' personal check. Even if Derees informed complainants that he was purchasing for a corporation, I cannot perceive in what respect a conveyance to an individual defrauded them. The next fraudulent representation alleged is that Derees told the complainants the property had been sold for unpaid taxes and that they no longer owned, or had any interest in it. While this was a true statement, it was not the whole truth, in that it did not include the information that they had the right of redemption. If we can assume that Blaisdell did not know that a property owner has a right to redeem from tax sale, I do not think Derees was under a legal duty to call his attention to such right. Blaisdell was presumed to know the law and moreover Derees (according to Blaisdell) had said that if Blaisdell did not accept Derees' offer he (Derees) would go to Freehold and obtain a deed from the 'sheriff,' which was information to Blaisdell that somewhere, through some official and upon payment of some sum of money, even a stranger could obtain good title, and if a stranger could

do this, the inquiry should have arisen in Blaisdell's mind, Why could the record owner not do so? And while Derees was telling Blaisdell that the latter no longer had any interest in the property, he was also, in effect, telling him that he had an interest which Derees wanted to buy, that is, that the complainants had something to sell. The final allegation is that Derees cajoled the complainants into executing the deed by telling them if they did not accept his offer he would leave and not return again. Every one knows that in negotiations for the purchase and sale of land, it is customary for the seller to ask more than he is willing to take and for a purchaser to offer less than he is willing to give, and that such transactions frequently reach a point where one or the other and perhaps both say: 'This is my final offer. Take it or leave it. I am through,' but it cannot be considered fraud on the seller if, after accepting the purchaser's alleged final offer he discovers that the purchaser was really prepared to pay a higher sum if forced to it.

"The situation here seems to me to have been that the complainants had practically abandoned the property and although they lived six or seven miles away and drove in the vicinity as often as once a year and had the means at their command to ascertain the amount of tax arrears and the probable value of the lots, they felt that their interest in the lots was of no value and when, after an ownership of thirty-four years, a stranger suddenly appeared and told them he thought their interest of sufficient value to justify an offer from him, they should have understood that they had something to sell and should have declined to negotiate until they had time for inquiry and investigation, but they jumped at the chance to get something for nothing, with the usual result. The case of *Industrial Savings, &c., Co.* v. *Plummer, 84 N. J. Eq. 184,* is one where a purchaser claimed to have been defrauded, but the remarks of the court therein contained can well be applied to the instant case. I cannot bring myself to believe that in obtaining the deed from the complainants to his wife, Derees practiced fraud or misrepresentation on the complainants, or concealed any fact which he was bound to disclose to them.

"If, however, the deed to Mrs. Derees was fraudulently obtained, there is no evidence to show that the defendant Howlett, to whom Mrs. Derees conveyed, had notice of the fraud and was not a *bona fide* purchaser. The deed to him is dated and acknowledged June 18th, 1926, and was recorded June 19th, 1926. The bill of complaint herein was filed June 19th, 1926, but a notice of *lis pendens* was filed in the Monmouth county clerk's office June 18th, 1926. The *lis pendens,* having been filed prematurely, is not constructive notice to Howlett (*Walker* v. *Hill's Executors, 22 N. J. Eq. 513*), and it is not shown that before recording his deed he had actual notice of it.

"The complainants say that they did not discover until a few days after they had executed the deed to Mrs. Derees that they had conveyed to her and not to a corporation. They then knew that Derees had deceived them in this respect and within a month after the sale they had information as to the amount of tax arrears and the value of the land. It was then they knew they had been induced to convey for what they considered to be an inadequate consideration. The defendants urged on the hearing that the complainants should at once have disavowed their conveyance and should have commenced suit to set it aside, and not having filed their bill until a month after the discovery of the alleged fraud, they are guilty of laches. Because I have found no fraud in the transaction and have found that the defendant Howlett acquired title without notice of the alleged fraud, I have not discussed this last point."

*Mr. Fred Dieffenbach, Jr.,* for the appellants.

*Mr. Plume L. Douglass* and *Mr. Charles Jones,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*101 N. J. Eq.* Blanchard, &c., Inc., *v.* Alliance, &c., Newark.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PAR-KER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HET-FIELD, DEAR, JJ. 15.

*For reversal*—None.